**ORIGINAL**

# In the United States Court of Federal Claims

No. 16-316C
Filed: August 15, 2016

**FILED**
**AUG 1 5 2016**
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| ROSEMARIE ELIZABETH ANNE HOWELL, et al., | * * * |
| Plaintiffs, | * * |
| v. | * * |
| UNITED STATES, | * * |
| Defendant. | * * |

<u>Pro se</u> Plaintiff; Subject Matter Jurisdiction; Proper Plaintiffs; Proper Defendants; Tort Claims; Criminal Claims; Fraud; Racketeering.

* * * * * * * * * * * * * * * * * * *

**Rosemarie Elizabeth Anne Howell**, <u>pro se</u>, Vancouver, Wash.

**Sosun Bae**, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With Sosun Bae was **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, **Robert E. Kirschman, Jr.**, Director, **Martin F. Hockey, Jr.**, Assistant Director, Civil Division, United States Department of Justice.

## OPINION

**HORN, J.**

### FINDINGS OF FACT

<u>Pro se</u> plaintiff Rosemarie Elizabeth Anne Howell filed a complaint with the United States Court of Federal Claims on behalf of herself, her spouse Brian P. Howell, "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(S)," and "'The HOWELL FAMILY-OWNED "Sovereign" CORPORATION', 'As' the Injured / 'Legitimate' / Heir / Owner / True Beneficiary / Person" on March 9, 2016.[1] Construed liberally, in the complaint, plaintiffs allege multiple claims, including fraud, racketeering, domestic terrorism, theft, and murder-for-hire funded by a "SLUSH FUND" of "the CLINTON(S), et al."[2] Although the complaint lists four plaintiff parties, Rosemarie Howell was the only plaintiff to sign the complaint. The complaint, when filed, identified as the defendant:

AMERICAN INTERNATIONAL GROUP, INC., et al.

---

[1] Capitalization, grammar, punctuation, emphasis, brackets, and other errors quoted in this Opinion are as they appear in plaintiffs' submissions.

[2] Plaintiffs also include language alleging misconduct by the United Parcel Service and the United States Postal Service, although plaintiffs do not assert specific claims against those entities.

USPS TRACKING # 9114 9999 4431 3548 1338 00
& CUSTOMER RECEIPT     For Tracking or inquiries go to USPS.com or call 1-800-222-1811.

> ("AIG, et al."), *and the community property comprised thereof,*
> "As" the "ultimate" Holding Company / Responsible Person / Illegal Exactor / Un-Authorized User / Un-Justly Enriched (Quantum Meruit)

The Clerk's Office filed the complaint as it was received. In subsequent filings, plaintiffs indicated the addition of the United States as another defendant along with AIG.

The complaint also includes allegations against a myriad of "'Co-Conspirator(s)'" other than the United States or AIG, including Prudential Bancorp, General Dynamics, Ford Motor Co., Pfizer, Inc., and State Farm. Although plaintiffs did not specifically identify the United States as the defendant until subsequent submissions to the court, the complaint lists fourteen formal "DEMAND(S)," at least one of which lists "The UNITED STATES of AMERICA, et al." as "Co-Conspirator(s)" to "Fraudulent Case(s) (plural's)." This particular demand, "ITEM (Liability) No. 12," includes allegations against AIG acting in concert with the United States judiciary. Despite the number of alleged co-conspirators to the events described throughout the complaint, plaintiffs make it clear that plaintiffs believe AIG is responsible for every claim:

> It is Equitable to note that "in EVERY" Issue / Matter / Other the 'Ultimate' Responsible Person / Illegal Exactor (U.S. V Amend.) / Un-Authorized User / Controller / Manager / Un-Justly Enriched (Quantum Meruit), is . . . AMERICAN INTERNATIONAL GROUP, INC. et al. ('AIG, et al.').

The complaint consists of forty-six pages of grievances and demands, and an additional sixteen appendices totaling 130 pages, for a cumulative total of 176 pages. While the allegations in the complaint and the subsequent additions and amendments with which Ms. Howell has inundated the court are often confusing and difficult to follow, it appears that plaintiffs' claims stem from two, alleged, distinct events.[3] First, an alleged December 26, 1984 incident when, according to Rosemarie Howell, AIG supposedly ordered a "MURDER-for-HIRE" "'HIT'" on Brian Howell, and, second, from an alleged March 3, 1999 traffic incident in which, according to Rosemarie Howell, her truck was rear-ended. Plaintiff Rosemarie Howell also alleges that AIG has made attempts at her life since 1978-79, and that her parents and grandparents were "wrongfully EXECUTED," but she gives no details as to these events.

---

[3] Since filing the complaint, Ms. Howell has submitted an amazing quantity of paper to the court, much of which has been repetitive or not relevant to the case in this court. As the volume of the submissions increased, the court began to return as unfiled a number of plaintiffs' filings, which were not in conformance with the Rules of the United States Court of Federal Claims, some of which were exact copies of previous filings and some of which were not relevant to the case in this court.

2

Plaintiffs further allege that the December 26, 1984 "'HIT'" on Brian Howell was ordered by AIG, or was ordered by Mr. Howell's own parents, in order for AIG to steal a trust belonging to Rosemarie Howell that allegedly had matured in 1983. Plaintiffs state:

> "AIG, et al." used this TRUST Account that Legally Belongs to [me] to FUND [my] desired death (beg. 1978-79) executing the December 26, 1984 "HIT" and subsequent Malice Aforethought that proceeded.

Plaintiffs also state:

> the so called CUSTODIAN(S) lack of desire to HAND-OVER said TRUST to the RIGHTFUL OWNER, obviously orchestrated [in concert] with [the IN-LAW(S)] [] a for profit "HIT" (December 26, 1984) which made certain the life-altering injuries and near death of BRIAN P. HOWELL…………….and produced………..
>
> [A] 'very' FRAUDULENT TRUST AGREEMENT.

Among plaintiffs' many submissions to the court, plaintiffs even include an estimate for dental work dated December 19, 2015, which "was never done for loss of benefits and income; but is a result of the December 26, 1984 'HIT'."

With respect to the 1999 traffic incident in which plaintiff Rosemarie Howell's truck was allegedly rear-ended, Rosemarie Howell claims that significant injuries resulted from the collision, and that she was "inflicted on impact with a trauma induced degenerative spinal cord injury referred to as 'trauma induced syringomyelia.'" According to plaintiffs, the person who rear-ended Ms. Howell's car was insured by Safeco Insurance Company. Safeco Insurance Company allegedly issued a claim number, but plaintiffs allege Safeco Insurance Company did not pay damages. Ms. Howell further alleges that on August 10, 2001, Safeco Insurance Company attempted to murder her, stating that Safeco Insurance Company "inflicted secondary life altering injuries intending my death."

In the complaint, plaintiffs demand immediate payment from AIG, and "pro rata" payments from other named co-conspirators, in the amount of $112,893,809,252.00. Plaintiffs appear to derive the $112,893,809,252.00 figure from a $19,630,391,358.30 demand against alleged co-conspirator Safeco Insurance Company for the 1999 traffic incident, plus the accrual of interest at twelve percent per annum, from January 1999 through August 2013. The $19.63 billion figure is a combination of an insurance claim totaling $19,579,307,200.00, and a demand for litigation expenses totaling $51,084,158.30. Plaintiffs provide no figures to explain how plaintiffs reached the approximately $19.63 billion and $51 million figures for the insurance claim and demand for litigation expenses. Plaintiffs include further demands in the sixteen appendices attached to the complaint, which also include letters sent to the co-conspirators in past years demanding awards of the following:

1. AT& T is to provide unlimited, FREE services to myself, my family, and my proceeding family, for the balance of our lives. The invasion of privacy is illegal.

3

2. Comcast Corporation is to provide unlimited, FREE services to myself, my family, and proceeding family, for the balance of our lives. The invasion of privacy, the illegal pornographic films, the illegal searching of my home, more than once, is illegal.

3. Ford Motor Company is to reimburse ALL monies paid for the 2006, F-350, write off the remaining balance owed on the 2006, F-350, sign over the title to the 2006, F-350, as well as fix the damages.

4. Ford Motor Company is to provide two (2) NEW, 2008, F-350 trucks loaded, FREE of charge, with lift kits and tires, identical to the 2006, F-350 purchased and damaged beyond repair. Damaging private, personal property is a criminal offense, punishable by law.

5. Ford Motor Company is to provide unlimited, FREE of charge, mechanical services, for the balance of my life, my families lives, the life of any vehicles purchased, procured. From Ford Motor Company. Stalking and endangering lives is a criminal offense, punishable by law.

6. Honeywell / ADT is to provide FREE, unlimited services, for life, life of family.

7. The job Brain was offered at Owens-Illinois, the job the tap, gps and videos, Safeco Corporation, Comcast Corporation, damaged need to be reinstated, immediately, or the dollar amount will be adjusted to reflect damages, pay, benefits, pension, 401k. etc. Brain is an excellent employee and I am fortunate he can work after everything he was through. This was very damaging and unnecessary. Any employer is fortunate to have an employee such as Brian with his caliber of work.

8. Quest is to provide unlimited, free services for life, life of my proceeding family.

9. Dish is to provide unlimited, free services for life, life of my proceeding family.

10. ALL ASSOCIATES ARE TO PROVIDE FREE, Unlimited services for life, life of all proceeding family.

11. SW Washington Medical Center, ALL Associates are to stay away from my property, this property never for sale. I had plans when purchased.

12. Safeco Corporation, is to:

    - Release all copies and originals of my records, bills, personal information, recordings, etc.

- ALL videos are to be collected and handed over to my possession.

- Safeco Corporation is not to interfere in my medical care, insurance, or nay of my business for my entire life.

- Safeco Corporation is to adhere to all subpoenas immediately.

13. ALL Safeco Corporation, Associates, Businesses, Friends, Board members, ALL associated businesses are to back off of my financials and correct their theft, illegal attacks and bills, including but not limited to, Columbia Collectors, Washington Mutual Bank, SW Washington Medical Center, etc. Money Laundering is a criminal offense, punishable by law.

14. ALL Safeco Corporation, ALL Business Associates, ALL Board Members are to stay away from myself, my family and my proceeding family, for the length of our lives.

   Another words, keep your illegal business deals away from my family.

15. Safeco Corporation and ALL Associated individuals, businesses, partners, board members, physicians, ALL parties, need to collect all the recordings and deliver them.

16. Safeco Corporation is to adhere to all subpoenas immediately.

As noted above, since the complaint was filed on March 9, 2016, plaintiffs have submitted a continuous stream of documents to the court, including many irrelevant and/or incomprehensible submissions. The court notes just a few examples, including: the same day that the complaint was filed, plaintiffs filed a "MOTION To TENDER The DEMAND(S) SATISFIED," requesting "Habeas Relief," "Seizure by Default (Quo Warranto)," and that the demands of a November 2, 2015 submission be fulfilled, although the November 2, 2015 submission was not attached to the March 9, 2016 complaint and was only sent to the court as an appendix on June 3, 2016. Moreover, the submission is virtually identical to the list of demands filed March 9, 2016. On March 28, 2016, defendant submitted a motion to stay the plaintiffs' "MOTION To TENDER The DEMAND(S) SATISFIED." On April 18, 2016, plaintiffs submitted another version of the "COMPLAINT" together with other documents, setting out nearly identical demands, but listing the United States as a defendant in addition to AIG. Next, on April 26, 2016, plaintiffs submitted a letter to the United States Social Security Administration. Then, on May 3, 2016, plaintiffs submitted multiple documents, including: "COMPLAINT," "SUMMONS," "PLAINTIFF'S OBJECTIONS To The COURT's ORDER Of April 21, 2016," "MOTION To JOIN PARTIES," "MEMORANDUM In SUPPORT Of MOTION TO JOIN PARTIES," "AFFIDAVIT In Support Of MOTION To JOIN PARTIES," "-MOTION To JOIN PARTIES - FINDINGS Of FACT & CONCLUSIONS Of LAW," and "PLAINTIFF'S

5

OBJECTION And RESPONSE To DEFENDANT(S) MOTION TO STAY RESPONSE TO PLAINTIFF'S MOTIONS." Subsequently, on July 11, 2016, plaintiffs filed another "MOTION To TENDER The DEMAND(S) SATISFIED," along with additional documents.

Despite plaintiffs' frequent failure to comply with the court's Rules and procedural requirements, in the beginning the court exercised leniency and filed some of the pro se plaintiffs' submissions until it became beyond burdensome, duplicative, and not helpful to the resolution of the case before the court. As the case proceeded, as noted above, the court began to return submissions which were duplicative, nonconforming with the court's Rules, or not relevant. For example, the referenced November 2, 2015 submission was virtually identical to the list of demands filed March 9, 2016. On May 13, 2016, plaintiffs submitted the same letter to the Social Security Administration that had been submitted on April 26, 2016, and which had previously been returned, unfiled on May 6, 2016.

On May 3, 2016, defendant moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) (2016), for lack of subject matter jurisdiction, and RCFC 12(b)(6) (2016), for failure to state a claim upon which relief may be granted. On June 3, 2016, plaintiffs submitted an "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," which was filed as plaintiffs' response to defendant's motion to dismiss on June 28, 2016. Along with this response, plaintiffs again submitted a revised list of "DEMAND(S) (plural's)," which was nearly identical to the complaint and to the two subsequent attempted, revised complaints, that had each been returned to plaintiff unfiled, as well as a new "MOTION To TENDER THE DEMAND(S) SATISFIED," and multiple memoranda and affidavits in support of that motion, which also were returned unfiled to plaintiffs.

## DISCUSSION

The court recognizes that plaintiffs are proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010)

(citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

As threshold issues, the court considers whether the pro se representative, Rosemarie Howell, may properly represent all the plaintiffs listed in the complaint. In the complaint, five plaintiffs are named, including Rosemarie Howell, Brian Howell, "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(s)," and "'The HOWELL FAMILY-OWNED 'Sovereign' CORPORATION.'" As noted above, the only plaintiff to sign the complaint and to submit filings has been Rosemarie Howell. As such, Rosemarie Howell appears to be attempting to serve as a pro se representative for all named plaintiffs.

According to RCFC 83.1(a)(3) an "individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any other proceeding before this court." RCFC 83.1(a)(3) (2016); see also Talasila, Inc. v. United States, 240 F.3d 1064, 1066 (Fed. Cir.) ("[Plaintiff] must be represented by counsel in order to pursue its claim against the United States in the Court of Federal Claims."), reh'g and reh'g en banc denied (Fed. Cir. 2001); Finast Metal Prods., Inc. v. United States, 12 Cl. Ct. 759, 761 (1987) ("[A] corporate 'person' can no more be represented in court by a non-lawyer—even its own president and sole shareholder—than can any individual."); Affourtit v. United States, 79 Fed. Cl. 776, 779 (2006) ("A corporation appearing before the United States Court of Federal Claims . . . must be represented by an attorney."). This rule applies despite possible financial hardship imposed on the plaintiffs. See Richdel, Inc. v. Sunspool Corp., 699 F.2d 1366, 1366 (Fed. Cir. 1983) (holding that the plaintiff's "substantial financial hardship" did not waive the rule requiring corporations to be represented by counsel); see also Balbach v. United States, 119 Fed. Cl. 681, 683 (2015) ("A pro se plaintiff cannot represent a corporation . . . The Court cannot waive this rule, even for cases of severe financial hardship." (citing Affourtit v. United States, 79 Fed. Cl. at 780)).

Although the complaint names "'The HOWELL FAMILY-OWNED 'Sovereign' CORPORATION,'" as a plaintiff in this case, the complaint does not provide any additional information about this corporation. Specifically, plaintiffs' submissions to this court do not describe the corporation and do not explain how or why Rosemarie Howell should be permitted to represent the corporation in this lawsuit. Therefore, to the extent Ms. Howell is attempting to represent "'The HOWELL FAMILY-OWNED 'Sovereign' CORPORATION,'" the complaint must be dismissed because, pursuant to RCFC 83.1(a)(3), a pro se plaintiff cannot represent a corporation.

Also named as a plaintiff in the complaint is Brian Howell. Brian Howell is identified as the spouse of Ms. Howell. In plaintiffs' March 9, 2016 filing of "FINDINGS OF FACT & CONCLUSIONS OF LAW," plaintiff Rosemarie Howell states "I was married to BRIAN PAUL HOWELL on OCTOBER 25, 1980." Plaintiff Rosemarie Howell also refers to Brian Howell as her husband in an e-mail, which was included in the filings submitted to the court, asking for Brian Howell's pension information. This court has held that a spouse is considered immediate family when considering the ability of a pro se litigant to represent the spouse. See Kogan v. United States, 107 Fed. Cl. 707, 708-09 (2012) (referring to an order granting defendant's wife, who is not an attorney, the ability to represent defendant pursuant to RCFC 83.1(a)(3)); see also Black's Law Dictionary 720 (10th ed. 2014) (defining immediate family as including a person's spouse); Chief War Eagle Family Ass'n & Treaty of 1837 & 1917 Reinstatement v. United States, 81 Fed. Cl. 234, 234 (2007) (defining "immediate family members" as a person's parents, spouse, children, and siblings) (citing Black's Law Dictionary 638 (8th ed. 2004)). Assuming for the sake of the motion to dismiss that Brian Howell is currently the spouse of Rosemarie Howell, he is a member of Rosemarie Howell's immediate family and she may properly represent Brian Howell as a pro se representative, assuming they remain married.

In addition to Brian Howell, the complaint also names unidentified "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(S)" as plaintiffs. The relationship of Ms. Howell to the "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(S)," however, is unclear in the complaint, and this court cannot ascertain whether Jane and John Doe are part of Ms. Howell's immediate family. In the complaint, plaintiff Rosemarie Howell describes her immediate family in different ways, and, at one point, she includes her five children, their spouses, and grandchildren, but the complaint does not provide sufficient identifying information.[4] The United States Court of Appeals for the Federal Circuit has not clarified whether "immediate family" relates to multi-generational spans or to the spouses of children. Additionally, some judges on this court have disagreed as to particular interpretations of "immediate family," but generally have maintained a narrow construction. See Chief War Eagle Family Ass'n & Treaty of 1837 & 1917 Reinstatement v. United States, 81 Fed. Cl. at 234 (declining to include grandparents in the definition of "immediate family"). Given that Jane and John Doe have not been identified to the court and the court cannot determine whether a familial relationship exists between plaintiff Rosemarie Howell and Jane and John Doe, Ms. Howell cannot represent these unidentified individuals as a pro se representative.

---

[4] Under section "ITEM (Liability) No. 4" in the list of demands, and under a section titled "ROSE A. HOWELL, and EX-REL's HOWELL(S)" plaintiffs claim, *"'AIG, et al.' cannot pay for the Injuries that I have sustained in "one Life Time"*; or, the TRAUMA that [my] CHILDREN have endured; or, the immense losses that have so "liberally" been inflicted; or, the protracted HELL that 'is' / has been politically imposed." The complaint also states: "Since my parent's and grand-parent's have been wrongfully EXECUTED (28 U.S.C. §2674 ¶2) 'OUR IMMEDIATE FAMILY' includes: Myself (Rosemarie a/k/a Rose), Brian, [our] Five Children and their Spouses, and [our] grandchildren and [our] preceding family members thereof."

8

Plaintiffs also filed their lawsuit in this court against an improper defendant, "AMERICAN INTERNATIONAL GROUP, INC., et al." Pursuant to RCFC 10, all claims in the United States Court of Federal Claims must have "the United States designated as the party defendant." RCFC 10(a) (2016); see also 28 U.S.C § 1491(a)(1) (2012). The United States Supreme Court has indicated, for suits filed in the United States Court of Federal Claims and its predecessors, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted); see also Kurt v. United States, 103 Fed. Cl. 384, 386 (2012). Stated differently, "the only proper defendant for any matter before this court is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) (emphasis in original); see also United States v. Sherwood, 312 U.S. at 588; May v. United States, 80 Fed. Cl. 442, 444 ("Jurisdiction, then, is limited to suits against the United States."), aff'd, 293 F. App'x 775 (Fed. Cir. 2008). Accordingly, this court cannot consider plaintiffs' claims against any defendant other than the United States.

Although the only proper defendant in this court is the United States, plaintiffs consistently identify AIG as the defendant and, in plaintiffs' "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," plaintiffs attempt to further justify naming AIG as a defendant. Plaintiffs argue that "[t]he Court may at any time, on motion or on its own, on just terms add or drop a party," and that "[t]he Court has the authority to dismiss non-essential parties to preserve jurisdiction." Plaintiffs cite Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567 (2004) to support their argument. Plaintiffs fail to note that this decision refers to the Federal Rules of Civil Procedure (FRCP), not to the Rules of the United States Court of Federal Claims. Id. at 572-73. Further, Grupo Dataflux v. Atlas Global Grp., L.P. clarifies that the rule permitting the court to add a defendant applies to the United States District Courts. See id. at 572-73 ("it is well settled that [FRCP] 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped.") (emphasis added).

The RCFC, not the FRCP, govern the actions of the United States Court of Federal Claims. In support of their argument, plaintiffs cite FRCP 21, which states that "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. Pro. 21 (2016). While the corresponding RCFC 21 uses identical text, RCFC 20(a), "Persons Who May Join or Be Joined," restricts the eligible parties in this court. See RCFC 20(a) (2016); RCFC 21. RCFC 20(a)(1) specifies the different types of plaintiffs that may be joined. RCFC 20(a)(1). However, RCFC 20(a)(2), which pertains to the type of defendants that may be joined, simply says "[Not Used]." RCFC 20(a)(2) (brackets in original). Thus, the language of RCFC 20(a) makes it clear that the United States is the only proper defendant in this court, and that this court does not have the authority to add defendants other than the United States. Therefore, as explained above, AIG may not be identified as a defendant in this court, neither in the complaint, nor as an added party. Further, to the extent that plaintiffs attempt to allege claims against Pfizer, Ford, or any other defendant or "Co-Conspirator(s)" that is not the United States, this court does not have jurisdiction to adjudicate those claims. Accordingly, all of plaintiffs' claims against defendants other than the United States are dismissed for lack of subject matter jurisdiction.

Separate from the defects in plaintiffs' complaint concerning the proper plaintiffs and proper defendant in this court, defendant has moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007.

> Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any

11

defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2016); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Defendant moves to dismiss the claims asserted in plaintiffs' complaint as outside of the court's subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), or for failure to state a claim upon which relief may be granted, RCFC 12(b)(6). In plaintiffs' "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," plaintiffs argue that a court may resolve issues without addressing subject matter jurisdiction. Plaintiffs claim that, "[t]he Supreme Court has recognized two 'threshold grounds' on which a court can resolve a case without addressing subject matter jurisdiction: (1) personal jurisdiction and (2) *forum non conveniens*." (internal citations omitted). First, plaintiffs cite Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999), to argue that, if a court finds personal jurisdiction, the court need not address subject matter jurisdiction. To the contrary, "[f]ederal courts may hear only those cases over which they have subject matter jurisdiction." See Semiconductor Energy Lab. Co., Ltd. v. Nagata, 706 F.3d 1365, 1368 (Fed. Cir. 2013). Subject matter jurisdiction must be present for the court to rule on a case, and a case must be dismissed if subject matter jurisdiction is lacking. See RCFC 12(b)(1)-(2); see also Semiconductor Energy Lab. Co., Ltd. v. Nagata, 706 F.3d at 1368. Plaintiffs misread the Supreme Court's opinion in Ruhrgas to indicate that if a court has personal jurisdiction, it need not have subject matter jurisdiction.

Plaintiffs also argue that *forum non conveniens* allows a court to hear a claim without subject matter jurisdiction. Plaintiffs also fundamentally misunderstand the doctrine of *forum non conveniens*, which allows a United States District Court to dismiss a case

"when an alternative forum has jurisdiction to hear [the] case, and. . . trial in the chosen forum would establish. . . oppressiveness and vexation to a defendant. . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007) (quoting American Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981); Koster v. (American) Lumbermens Mut. Casualty Co., 330 U.S. 518, 524 (1947))) (ellipses and modifications in original). Contrary to plaintiffs' argument, forum non conveniens is not a method of allowing jurisdiction when subject matter jurisdiction does not exist, rather, it is a method of declining jurisdiction when jurisdiction may exist, but when another court is a more appropriate and convenient forum. See id.; see also Halo Creative & Design Ltd. v. Comptoir Des Indes Inc., 816 F.3d 1366, 1369 (Fed. Cir. 2016) ("*Forum non conveniens* . . . allows a federal district court to dismiss a suit over which it would normally have jurisdiction if trial in a foreign forum would 'best serve the convenience of the parties and the ends of justice.'"). The Supreme Court has explained that a District Court may dispose of an action pursuant to the doctrine of forum non conveniens without first determining whether the court has subject matter jurisdiction to hear the case because a forum non conveniens dismissal is a not based on the merits of a case. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. at 432. The subject matter jurisdiction requirement, however, is not overridden by the doctrine of forum non conveniens.

In the complaint, plaintiffs appear to allege claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 (2016), which was enacted to "protect interstate commerce and the interests of participants in employee benefit plans." 29 U.S.C. § 10001(b). Plaintiff Brian Howell allegedly holds pensions within the ERISA framework with General Dynamics, Sulzer Pumps, and Continental Casualty Co., among others, for which plaintiffs appear to be seeking payment. Plaintiffs appear to argue that this court has jurisdiction to hear ERISA claims because ERISA pensions allegedly represent government contracts. Plaintiffs state "***ERISA claims*** are contracts. 28 U.S.C. §1491 (a)(1). In this case government contracts that are void ab intio." Ostensibly, plaintiffs ask that the United States and AIG pay these pensions, although the listed ERISA-governed pensions, according to the complaint, are held by General Dynamics, Sulzer Pumps, and Continental Casualty Co., among others. The ERISA statute, however, clearly assigns exclusive jurisdiction for claims under ERISA to the United States District Courts, and, in certain circumstances, it grants concurrent jurisdiction to District Courts and to state courts. See 29 U.S.C. § 1132(e)(1), (f), (k) (2012) ("the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by the participant, beneficiary, fiduciary. . . . State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.") Moreover, plaintiffs' argument fails on the plain language of 28 U.S.C. § 1501, which states, "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for a pension." 28 U.S.C. § 1501 (2012). Any claims asking the federal government to intervene and force private employers to pay the pensions

13

allegedly due to plaintiffs, or for the government to pay the pensions in place of the private employers, lie outside the subject matter jurisdiction of this court and are dismissed.

Plaintiffs further appear to make allegations concerning social security disability benefits. From the confusing language in the complaint, it seems that plaintiffs do not demand that the United States pay social security benefits. To the contrary, the complaint apparently suggests that the United States has been paying plaintiffs for social security disability benefits, and plaintiffs believe AIG should reimburse the United States for those payments:

> **"AIG, et al." is DEMANDED to RE-IMBURSE** "the Government, Social Security Department" for **"all" past paid Social Security Disability Payments** made (4/28/1999-present) which [must be] Funded *"out-of AIG, et al. legitimately owned Asset's"* – "AIG, et al." is the cause in fact of said Disability *(i.e.,* Life-Altering Injuries) and therefore, Responsible As A Matter of LAW.

Regardless, plaintiffs may not bring a social security claim in this court. The Court of Federal Claims does not have jurisdiction over claims arising under the Social Security Act. See Addams-More v. United States, 81 Fed. Cl. 312, 315, aff'd, 296 F. App'x 45 (Fed. Cir. 2008) (citing Marcus v. United States, 909 F.2d 1470, 1471 (Fed. Cir. 1990) (holding "that the Claims Court has no jurisdiction under the Tucker Act . . . over claims to social security benefits.")). The statute at 42 U.S.C. § 405(g) (2012) instructs that any claims for review of social security benefits payment "shall be brought in the district court[s]," and 42 U.S.C. § 405(h) further specifies that no decision "shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(g), (h). Accordingly, any claim that plaintiffs intended to bring against the United States regarding social security benefits are dismissed for lack of subject matter jurisdiction.

Defendant also has argued that this court lacks subject matter jurisdiction to consider plaintiffs' allegations that sound in tort or criminal law. Plaintiffs make multiple allegations against AIG, while also implicating the United States, including fraud, "Felony Theft [in concert] with 'AIG, et al.,'" and "RICO Enterprising." Plaintiffs demand that AIG **"RESTORE** [our] Reputations" and that AIG **"VACATE, REVERSE, and DISMISS** 'all' Judgments / Sentences / charges / other [] in 'every' Case . . . ." To the extent that plaintiffs' complaint asserts claims of conspiracy, misrepresentation, theft, including identity theft, fraud, and racketeering, those claims sound in tort or allege criminal acts.

The Tucker Act expressly excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.") (emphasis added); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States,

14

133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims. Here, Mr. Jumah seeks damages for '[n]eglect, [m]isrepresentation, [f]alse [i]mprisonment, [c]onspiracy, [i]ntentional [i]nfliction of emotional [d]istress, [i]nvasion of [p]rivacy, [n]egligence and [t]respass and [p]unitive [d]amages.' These are all claims sounding in tort." (internal citation omitted; all brackets in original)), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties' . . . [and] Plaintiffs' claims of fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, and defamation, and their claims that the Government deprived Ms. Edelmann of her right to a fair trial, are tort claims." (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Plaintiffs' claims sounding in tort, such as misrepresentation and conspiracy, must be dismissed for lack of subject matter jurisdiction.

To the extent that plaintiffs are alleging acts of criminal conduct, such as criminal conspiracy, identity theft, criminal fraud, and racketeering, this court also lacks jurisdiction to adjudicate those claims. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) (holding that "this court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts.") (internal citations omitted); Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); Matthews v. United States, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), recons. denied, 73 Fed. Cl. 524 (2006); McCullough v. United States, 76 Fed. Cl. at 4 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims). Accordingly, plaintiffs' allegations asserting criminal acts, such as fraud, racketeering, identity theft, and "Felony Theft" must be dismissed for lack of subject matter jurisdiction.

Furthermore, plaintiffs' claims appear to try to implicate the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2012), but it is unclear exactly how. Plaintiffs refer to:

*In Re (Government)*:
APPEAL(OIP) No. 2015-04715
And
""FREEDOM OF INFORMATION ACT APPEAL"" (OSG) No. 2015-119560.

Plaintiffs' claim lists a ""'FOIA' APPEAL" and an Office of Information Policy (OIP) case number. Regardless, the Court of Federal Claims has no jurisdiction to adjudicate FOIA claims, as Congress explicitly vested exclusive jurisdiction regarding those matters in the United States District Courts. See 5 U.S.C. § 552(a)(4)(B); see also Gaines v. United States, 226 Ct. Cl. 691, 692 (1981) ("Congress has vested jurisdiction not in [the United States Court of Federal Claims] but in the district courts over Freedom of Information and Privacy Act claims."). Therefore, any FOIA appeals may not be the basis for filing a claim in this court, and must be dismissed for lack of subject matter jurisdiction.

In "PLAINTIFF'S OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS" plaintiffs also appear to allege "contracts-based claims." Although plaintiffs correctly indicate that this court has subject matter jurisdiction to consider breach of contract claims against the United States, plaintiffs do not explain their "contracts-based claims" or set forth any facts to support a breach of contract claim. Specifically, plaintiffs do not appear to even allege that a contract exists between plaintiffs and the United States. As a result, plaintiffs have failed to state a claim for relief with regard to any alleged contract claims.[5]

Further, in plaintiffs' "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," plaintiffs, for the first time, raise constitutional clause violations against the United States. Plaintiffs allege violations of the Takings Clause, Due Process Clause, Privileges and Immunities Clause, Cruel and Unusual Punishment Clause, Equal Protection Clause, Privacy Clause, and Commerce Clause.

Regarding plaintiffs' claims alleging a violation of due process, the United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028), cert. denied, 134 S. Ct. 259 (2013)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the

---

[5] To the extent plaintiffs allege a violation of the Contract Clause of the United States Constitution, this court does not have jurisdiction to entertain such a claim because the Contract Clause "is a prohibition directed at the states, and not the federal government." McNeil v. United States, 78 Fed. Cl. 211, 225 (2007), aff'd, 293 F. App'x 758 (Fed. Cir. 2008); see also U.S. Const. art. I, § 10, cl. 1.

16

basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007). The court also does not have subject matter jurisdiction for claims brought under the Privileges and Immunities Clause of the United States Constitution. McCullough v. United States, 76 Fed. Cl. at 4 ("[N]either the Fifth Amendment Due Process Clause. . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff.").

Furthermore, this court does not have jurisdiction over claims brought under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution. See Tasby v. United States, 91 Fed. Cl. 344, 346 (2010) ("[T]he Eighth Amendment prohibitions of excessive bail or fines, as well as cruel and unusual punishment, are not money-mandating.") (citation omitted)); Hernandez v. United States, 93 Fed. Cl. 193, 198 (2010) ("Plaintiff avers that his rights under the First, Fourth, Fifth, Sixth, Seventh, Eight, Ninth, Fourteenth, and Fifteenth Amendments were violated. None of these claims allege a violation for which money damages are mandated."); Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'") (citations omitted).

In addition, this court does not have subject matter jurisdiction over claims grounded in the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See LeBlanc v. United States, 50 F.3d at 1028 (indicating that a claim under the Equal Protection Clause of the Fourteenth Amendment is not sufficient for jurisdiction in the United States Court of Federal Claims because it does not "mandate payment of money by the government." (citing Carruth v. United States, 224 Ct. Cl. 422, 445 (1980))); Potter v. United States, 108 Fed. Cl. 544, 548 (2013) (finding that "this Court lacks jurisdiction over violations under the Due Process Clauses of the Fifth and Fourteenth Amendments . . . because they do not mandate payment of money by the government.") (internal citations omitted) (modifications in original); Warren v. United States, 106 Fed. Cl. 507, 511 (2012) (holding that, since the "Fourteenth Amendment guarantee of equal protection" is not money mandating, "[a]ccordingly, the court lacks jurisdiction over these claims.").

Likewise, this court does not have subject matter jurisdiction over claims rooted in, as plaintiffs frame it, the "*'Privacy Clause' of the U.S. Fourth Amendment)*," as the court has no jurisdiction over any claim based on the Fourth Amendment. See LaChance v. United States, 15 Cl. Ct. 127, 130 (1988) ("[T]he fourth amendment does not mandate the payment of money by the United States." (citing Shaw v. United States, 8 Cl. Ct. 796, 800 (1985))); Roberson v. United States, 115 Fed. Cl. 234, 240 ("The Fourth Amendment is not money-mandating." (citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997))), appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Haka v. United States, 107 Fed. Cl. 111, 113-14 (2012); Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) ("[T]his Court does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))),

aff'd, 682 F.3d 1364 (Fed. Cir. 2012). Accordingly, all of the plaintiffs' above-identified constitutional claims are dismissed for lack of subject matter jurisdiction.

Plaintiffs also appear to try to allege a violation of the Takings Clause of the Fifth Amendment to the United States Constitution, but plaintiffs demonstrate a fundamental misunderstanding of the Takings Clause by invoking it against private entities and individual persons. For instance, plaintiffs state, "'AIG, et al.' took and kept on taking (Illegally Exacting what does not belong thereto (U.S. V Amend.))."

Plaintiffs also state:

> "AIG, et al." RICO Enterprising by and through *consecutive politically motivated* "HIT(S)" for the premeditated intent / purpose of ILLEGALLY EXACTING (U.S. V Amend.) """"Sovereign Wealth(s) / Sovereign(s)" that "are" the Legal, Vested, Rightful, "Legitimate" Birthright / Heritage of ROSEMARIE E. A. (nee' VIKARA) HOWELL""""" Manifested Damages of an Inconceivable Degree;
>
> NONETHELESS, "AIG, et al." is Legally Responsible and [must be] held Accountable **As A Matter of LAW**.

To the extent plaintiffs allege any violation of the Fifth Amendment Taking Clause by the United States, plaintiffs appear to be arguing a conspiracy between the United States and AIG, as follows:

> Plaintiffs' *"demands"* are well-pled [vested claim's] that the UNITED STATES [in concert] with AIG, et al. (defendant's and co-defendant's) ***"un-authorized" TAKING*** (*citing* the ***"Takings Clause"*** of the U.S. V Amend) has [made certain] when violating an 'infant child' (*i.e.*, the plaintiff) and kept on truckin' with the "intent" of Defrauding the plaintiff out-of [her] Inheritance.

Although plaintiffs try to assert a claim under the Takings Clause, which, if properly filed, could fall within the purview of this court's jurisdiction, plaintiffs do not even identify a property interest owned by plaintiffs that was allegedly taken by the United States, which is a necessary part of a valid Fifth Amendment Takings claim. The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)), reh'g denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d 1370, 1377 (Fed. Cir.) (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372), cert. denied, 555 U.S. 1045 (2008).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 563 U.S. 989 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 353 U.S. 1077 (2002) and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992)). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003) and M & J Coal Co. v. United States, 47 F.3d at 1154). The court does not address the second step "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381 and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005). Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372).

Here, plaintiffs have failed to allege or demonstrate a legally cognizable property interest and make only unsupported, bald allegations which are insufficient to support plaintiffs' takings claim. As noted above, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d at 723; see also Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (noting, in discussion of motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), that "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim"). In order to survive a motion to dismiss for failure to state a claim, the factual allegations set forth in the complaint "must be enough to raise [plaintiff's] right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1216, p.235-36 (3d ed. 2004). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 557). Because plaintiffs offer only vague and conclusory allegations that trusts and property were stolen by AIG, not the United States, without even demonstrating a legally cognizable property interest, the court finds that plaintiffs have failed to state a claim under the Takings Clause of the Fifth Amendment.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED**, and plaintiffs' complaint is

DISMISSED. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

IT IS SO ORDERED.

_____
MARIAN BLANK HORN
Judge